UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

TRUDY ERDMAN, on her own behalf
and on behalf of those similarly
situated,

    Plaintiffs,

vs.

HQ RESOURCES, INC.,

    Defendant.
_____/

Case No.: 2:20-cv-1366

COMPLAINT – COLLECTIVE ACTION

**COMPLAINT & DEMAND FOR JURY TRIAL**
**(Collective Action Complaint)**

Plaintiffs, TRUDY ERDMAN ("ERDMAN"), on her own behalf and on behalf of those similarly situated (collectively as "Plaintiffs"), were employees of Defendant, HQ RESOURCES, INC., ("HQR" or "Defendant"), and brings this action for unpaid overtime compensation, liquidated damages, declaratory relief and other relief under the Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) (the "FLSA").

## INTRODUCTION

1. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) and 29 U.S.C. § 207(a).

2. The Fair Labor Standards Act was passed in 1938. Its principle purpose was to protect all covered workers from substandard wages and oppressive working hours, labor conditions that are detrimental to the maintenance of minimum standards of living necessary for health, efficient, and the general well-being of workers. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444 (1981).

1

3. Section 7(a) of the FLSA requires payment of time-and-one-half an employee's regular hourly rate whenever a covered employee works in excess of forty (40) hours per work week. 29 U.S.C. § 207(a).

4. The liquidated damages provision of the FLSA constitutes a congressional recognition that failure to pay the statutory minimum on time may be so detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and the general well-being of workers and to the free flow of commerce, that double payment must be made in the event of a delay in order to insure restoration of the worker to that minimum standard. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08, 65 S.Ct. 895, 902 (1945).

5. To the extent any partial payments have been made by Defendant to Plaintiffs of the disputed amounts at the time of the filing of this complaint, this action seeks to recover judgment in favor of Plaintiffs and against Defendant as well as all remaining damages, including but not limited to liquidated damages and reasonable attorneys' fees and costs. *See id.*

6. Defendant in this case, an IT staffing and consulting firm, violated the FLSA by failing to pay Plaintiffs and other similarly-situated Software Trainers time and one half for all of their hours worked over forty (40) each week.

7. This action is intended to include each and every Software Trainer who worked for Defendant at any time within the past three (3) years, worked more than forty (40) hours per week during one or more weeks, and were not paid overtime compensation.

## **PARTIES**

8. Plaintiff, and those similarly situated individuals ("class members"), earned an hourly rate in exchange for work performed as "Software Trainers" on behalf of Defendant.

9. Plaintiff, ERDMAN, was employed by Defendant as a Software Trainer from approximately February 2018 to March 2018 working on the Danbury Hospital "Go Live" project in Danbury, Connecticut.

10. Defendant, HQR, is a Pennsylvania Profit Corporation with multiple offices located throughout the United States and Canada.

11. HQR's principal place is business is located at 559 Rodi Road, Pittsburgh, PA 15235. See Defendant's Website.

12. HQR is an IT staffing and consulting firm that, among other things, assists companies (especially healthcare organizations) in implementing and optimizing technology solutions.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 as they arise under the FLSA, 29 U.S.C. § 201, *et seq*.

14. Defendant, HQR, conducts business in, among others, Pittsburgh, Pennsylvania, therefore venue is proper in the Western District of Pennsylvania, Pittsburgh Division, pursuant to 28 U.S.C. § 1391(b)(1) & (c).

## COVERAGE

15. At all material times during the last three years, Defendant was an enterprise covered by the FLSA, and as defined by 29 U.S.C. § 203(r) and 203 (s).

16. At all material times during the last three years, Defendant was an employer as defined by 29 U.S.C. § 203(d).

17. At all material times during the last three years, Defendant has had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

18. At all material times during the last three years, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 203(s)(1) of the FLSA, in that the company had two or more employees:

    a. Engaged in commerce; or

    b. Engaged in the production of goods for commerce; or

    c. Handling, selling or working on goods or materials that have been moved in or produced for commerce. (i.e. computers, telephones, equipment and/or office supplies).

## FACTUAL ALLEGATIONS

19. Defendant, HQR, is a company classified as an IT staffing and consulting firm.

20. Defendant, HQR, has a common pay policy and/or pay practice which fails to pay certain non-exempt employees at a rate of time and one-half their regular rate of pay for hours worked in excess of forty (40) per week.

21. Plaintiff and those similarly situated to her were employed by HQR as Software Trainers and paid an hourly rate.

22. As a Software Trainer, Plaintiff and those similarly situated to her, were employed by HQR to provide on-site training to HQR's clients.

23. For example, Plaintiff and other Software Trainers were hired by HQR to provide on-site training to HQR's client, Danbury Hospital, during the "Go-Live" of their Electronic Medical Record system.

24. In the software development industry, a "Go-Live" is the point at which a system is officially and formally available to users who can then initiate transactions in the system.

25. With respect to the Danbury Hospital project, when Plaintiff and her fellow Software Trainers first arrived on-site to begin work on the project, they received training on the particular software system purchased by Danbury Hospital which was called Soarian.

26. Plaintiff and those similarly situated to her then used that knowledge to provide "at the elbow" training to Danbury Hospital employees on how to use the system.

27. Defendant improperly misclassified Plaintiff, and those similarly situated to her, as exempt from overtime.

28. Plaintiff and those similarly situated to her routinely worked in excess of forty (40) hours per week as part of their regular job duties.

29. Despite working more than forty (40) hours per week, Defendant failed to pay Plaintiff, and those similarly situated to her, overtime compensation at a rate of time and a half of their regular rate of pay for hours worked over forty (40) in a workweek.

30. Upon information and belief, Defendant had/has a company-wide policy of failing to pay its hourly Software Trainers proper overtime compensation for all of their overtime hours worked.

31. Defendant knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay proper overtime compensation with respect to Plaintiff and those similarly situated to her.

32. Defendant did not act in good faith or reliance upon any of the following in formulating its pay practices: (a) case law, (b) the FLSA, 29 U.S.C. § 201, *et seq.*, (c) Department of Labor Wage & Hour Opinion Letters or (d) the Code of Federal Regulations.

33. Defendant has acted willfully in failing to pay Plaintiffs, and those similarly situated to them, in accordance with the law.

## COUNT I
## RECOVERY OF OVERTIME COMPENSATION UNDER THE FLSA

**A.     Failure to Pay Overtime Compensation in Accordance with the FLSA**

34. Paragraphs one (1) through thirty-three (33) are incorporated as though fully set forth herein.

35. HQR violated the FLSA, 29 U.S.C. § 207 by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

36. HQR knew or should have known its pay practices were in violation of the FLSA.

37. HQR is a sophisticated party and employer, and therefore knew (or should have known) its policies were in violation of the FLSA.

38. The decision and practice by HQR to cause and/or require Plaintiffs to perform work in excess of forty (40) hours per week at less than one and one-half times their regular rate of pay was neither reasonable nor in good faith.

39. Plaintiffs are entitled to overtime wages for all hours worked in excess of forty (40) hours in each week pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

**B.    Collective Action Allegations**

40. Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all those who are (or were) similarly situated to Plaintiff ERDMAN.

41. Other similarly situated employees have been victimized by HQR's patterns, practices, and policies, which are in willful violation of the FLSA.

42. The FLSA Collective is defined as:

**Each and every Software Trainer who worked for Defendant at any time within the past three (3) years, worked more than forty (40) hours per week during one or more weeks, and was not paid overtime compensation.**

43. HQR's systematic failure to pay overtime compensation for all overtime hours worked at the rates required by the FLSA results from generally applicable policies and practices, and does not depend on the personal circumstances of the FLSA Collective members.

44. Thus, Plaintiff ERMAN's experience is typical of the experiences of the FLSA Collective members.

45. The specific job titles or precise job requirements of the various FLSA Collective members does not prevent collective treatment.

46. All of the FLSA Collective members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

47. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts. Indeed, the FLSA Collective members

are non-exempt Software Trainers entitled to be paid the proper amount of overtime compensation for all hours worked over forty (40) in a workweek.

48. HQR has employed (and continues to employ) approximately two hundred or more Software Trainers.

49. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and HQR will retain the proceeds of its blatant violation.

50. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the collective and provide for judicial consistency.

51. Accordingly, the FLSA Collective of similarly situated plaintiffs should be certified as defined in Paragraph 45 and notice should be promptly sent.

**C.  Relief Sought**

52. Plaintiff ERMAN respectfully prays for judgment against HQR as follows:

a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA and requiring HQR to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

b. For an Order approving the form and content of a notice to be sent to all potential collective action members advising them of the pendency of this litigation and of their rights with respect thereto;

  e. For an Order awarding Plaintiff (and those who have joined in the suit) back wages that have been improperly withheld;

  f. For an Order pursuant to Section 16(b) of the FLSA finding HQR liable for unpaid back wages due to Plaintiff (and those who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those who have joined in the suit);

  g. For an Order awarding Plaintiff (and those who have joined in the suit) the costs of this action;

  h. For an Order awarding Plaintiff (and those who have joined in the suit) attorneys' fees;

  i. For an Order awarding Plaintiff (and those who have joined in the suit) pre-judgment and post-judgment interest at the highest rates allowed by law;

  j. For an Order awarding Plaintiff a service award as permitted by law;

  k. For an Order compelling the accounting of the books and records of HQR; and

  l. For an Order granting such other and further relief as may be necessary and appropriate.

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable as a matter of right.

Date:   September 10, 2020					Respectfully submitted,

                                        **MORGAN & MORGAN, P.A.**

Angeli Murthy, Esquire
PBN: 93699
MORGAN & MORGAN, P.A.
8151 Peters Road, Suite 4000
Plantation, FL 33324
Telephone: (954) 318-0268
Facsimile:  (954) 327-3016
E-mail: amurthy@forthepeople.com

*/s/ C. Ryan Morgan (Pro Hac Vice forthcoming)*
C. Ryan Morgan, Esq.
FBN 0015527
*/s/ Jolie N. Pavlos (Pro Hac Vice forthcoming)*
Jolie N. Pavlos, Esq.
FBN 0125571
20 N. Orange Ave., 16th Floor
P.O. Box 4979
Orlando, FL 32802-4979
Telephone: (407) 420-1414
Facsimile: (407) 867-4791
Email:  rmorgan@forthepeople.com
Email:  jpavlos@forthepeople.com

*Attorneys for Plaintiff and the Putative Collective Members*